UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ANGELA R. PARRA,                                        Case No. 14-10339 TL

       Debtor.

## <u>MEMORANDUM OPINION</u>

The Debtor's former husband, Thomas Munker ("Munker"), filed a motion for summary judgment,[1] seeking a determination that his claim[2] against the Debtor is a § 507(a)(1)(A)[3] priority claim. Inexplicably, the Debtor did not respond to the motion. Because the Court cannot determine on the current record whether the debt is a "domestic support obligation,"[4] it will deny the Motion.

---

[1] Motion for Summary Judgment, filed June 17, 2014, doc. 37 (the "Motion").

[2] Determined by Judge Parsons in *Munker v. Munker*, No. DM-2010-00122 in the Twelfth Judicial District Court, Otero County, New Mexico (the "Divorce Proceeding").

[3] Unless otherwise noted all statutory references are to 11 U.S.C.

[4] Section 101(14A) provides: "The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—

(A) owed to or recoverable by—

    (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or

    (ii) a governmental unit;

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

(C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—

    (i) a separation agreement, divorce decree, or property settlement agreement;

    (ii) an order of a court of record; or

    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and

## I.  FACTS

Solely for the purpose of ruling on the Motion, the Court finds the following facts:[5]

The Debtor and Munker were married on February 14, 2006.  While married, Munker and the Debtor operated a business and incurred community debts.  The parties were divorced on May 7, 2010, but the Divorce Proceeding continued so a determination could be made of the parties' respective rights, responsibilities, and obligations.  Judge Parsons conducted a two-day trial on February 13-14, 2013.  She sent a letter to counsel on February 22, 2013, outlining her ruling on all pending issues, supplemented by a March 26, 2013 letter.  On April 26, 2013, Judge Parsons entered a Final Order After Hearing (the "Final Order").

In the Final Order, Judge Parsons determined the ownership of personal and real property and apportioned debts between Munker and the Debtor.  A portion of the Final Order required the Debtor to make monthly payments to Munker.  In her findings, Judge Parsons described these payments as a domestic support obligation.

On February 6, 2014, the Debtor filed this bankruptcy case.  She filed a Chapter 13 Plan (the "Plan") on March 4, 2013.

---

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt."

[5] Because Debtor did not respond to the Motion, Fed.R.Civ.P. 56(e) governs the Court's findings of fact for purposes of the motion.  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order."  In this case, because the Debtor has entirely failed to respond to the Motion and because it will aid in final resolution of the Motion on its merits, the Court will exercise its discretion and consider—for purposes of ruling on the Motion—all facts asserted in the Motion, undisputed.  In addition, the Court finds that the Final Order and the letter rulings attached thereto are true and accurate copies and are admissible evidence for purposes of this Motion as well as for use at trial.

-2-

The Plan drew objections from the Chapter 13 Trustee, Munker, and a secured creditor. Only Munker's objection is relevant to the Motion. As shown by her Plan, Debtor values Munker's priority claim at $58 (to be paid $1 per month for 58 months). Munker, in contrast, asserts a priority claim of $130,498.60 for a pre-petition domestic support obligation owed by Debtor.[6] If Munker is correct, the Plan is unconfirmable.

II.     PROCEDURAL POSTURE AND SUMMARY JUDGMENT STANDARD

Confirmation of a Chapter 13 Plan is a contested matter and is therefore governed by Fed.R.Bankr.P. 9014. Pursuant to Rule 9014(c), Fed.R.Bankr.P. 7056 is applicable to contested matters. Thus, the Motion is properly before the Court. Additionally, although the Motion relates to confirmation of the Plan, if the Court determines that all or any portion of Debtor's obligation to Munker is a domestic support obligation, the debt would be nondischargeable pursuant to § 523(a)(5).

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and … [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether summary judgment should be granted, the Court will view the record in the light most favorable to the party opposing summary judgment. *Harris v. Beneficial Okla., Inc. (In re Harris)*, 209 B.R. 990, 995 (10th Cir. BAP 1997). Further, when considering a motion for summary judgment the Court must "examine the factual record and

---

[6] Proof of Claim #10, filed June 24, 2014 (the "Munker Claim").

reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995) (citation omitted). To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *See Anderson,* 477 U.S. at 251; *Vitkus,* 11 F.3d at 1539.

Debtor's failure to respond does not mean that the Motion will be granted. Rather, the Court must determine whether judgment is appropriate. *See, e.g., United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004) (court cannot base summary judgment on mere fact that the motion is unopposed, but must consider the merits of the motion); *D.H. Blair & Co. Inc. v. Gottdiener,* 462 F.3d 95, 110 (2d Cir. 2006) (citing and following *5800 SW 74th Street*). In determining appropriateness of summary judgment, the Court must review the supporting materials and determine if the movant has met his burden of proof. *D.H. Blair,* 462 F.3d at 110; *John v. State of Louisiana (Bd. of Trustees for State Colleges and Universities),* 757 F.2d 698, 708 (5th Cir. 1985).

III.  DISCUSSION

A.  Determining Whether a Debt is a Domestic Support Obligation.

Whether a given debt is in the nature of support is an issue of federal law. *Cummings v. Cummings,* 244 F.3d 1263 (11th Cir. 2001), citing *In re Strickland,* 90 F.3d 444, 446 (11th Cir. 1996). Although federal law controls, state law does "provide guidance in determining whether the obligation should be considered 'support' under § 523(a)(5)." *Id.*

-4-

"In determining whether an obligation is in the nature of support, the Court must not rely on labels the parties or the state court give to an obligation." *Brown v. Brown (In re Brown)*, 2013 WL 5376541, *5 (Bankr. D.N.M. 2013). Instead, courts should undertake a two-pronged analysis "into both the parties' intent and the substance of the obligation." *Crum v. Howe (In re Howe)*, 2007 WL 2509021 (Bankr. D.N.M. 2007) citing *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717 (10th Cir. 1993). The Tenth Circuit has stated:

> [A] bankruptcy court must look beyond the language of the decree to the intent of the parties and the substance of the obligation to determine whether the obligation is actually in the nature of alimony, maintenance or support . . . Congress, by directing federal courts to determine whether an obligation is actually in the nature of alimony, maintenance, or support sought to ensure that § 523(a)(5)'s underlying policy is not undermined either by the treatment of the obligation under state law or by the label which the parties attach to the obligation.

*Sampson*, 997 F.2d at 722-23 (citations omitted).[7]

In determining the first prong of the test, courts usually look to the intent of the parties or, as in this case, the intent of the state court. *See In re Evert*, 342 F.3d 358, 364 (5th Cir. 2003) (courts will generally look beyond the labels state courts and the parties give obligations that debtors seek to have discharged); *Young v. Young (In re Young)*, 35 F.3d 499, 500 (10th Cir. 1994) (the court must divine the spouses' shared intent as to the nature of the payment and look beyond unambiguous language); *In re Andrews*, 434 B.R. 541, 549 (Bankr. W.D. Ark. 2010) (the intent of the state court is a primary focus when the bankruptcy court examines whether a debt is a domestic support obligation); *Morel v. Morel (In re Morel)*, 983 F.2d 104, 105 n. 3 (8th Cir.

---

[7] Although *Sampson* was decided before the 2005 amendments to the Bankruptcy Code changed the definition of domestic support obligation and § 523(a)(5), the different language in did not change the standard for whether an obligation is in the nature of support. *See Stover v. Phegley (In re Phegley)*, 443 B.R. 154 (8th Cir. 2011). "Thus the standard set forth in *Sampson* remains applicable to dischargeability actions seeking a determination of whether a debt constitutes a domestic support obligation . . . ." *Brown*, 2013 WL 5376541 at *5, n. 2.

1992) (in a contested divorce proceeding the bankruptcy court must examine the intent of the state court).

For the second prong of the test, courts have looked at various factors to determine the true nature of the obligation. *Sampson* identifies four:

(1)    If, under the circumstances, the spouse needs support;

(2)    If there are minor children and an imbalance of income;

(3)    If payments are made directly to the recipient and in installments over a substantial period of time; and

(4)    If the obligation terminates on remarriage or death.

*Sampson*, 997 F.2d at 722 citing *In re Goin*, 808 F.2d 1391, 1392-93 (10th Cir. 1987). This list of factors has been clarified and added to. One treatise lists eight factors courts have considered:

(1)    Labels in the agreement or order;
(2)    Income and needs of the parties at the time the obligation became fixed;
(3)    Amount and outcome of property division;
(4)    Whether the obligation terminates upon debtor's death or remarriage or emancipation of children;
(5)    Number and frequency of payments;
(6)    Waiver of alimony or support rights in agreement;
(7)    Availability of state court procedures to modify the obligation or enforce it through contempt remedy; and
(8)    Tax treatment of obligation.

4 Collier on Bankruptcy ¶523.11[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

Additionally, although the determination of a debt as a domestic support obligation is a matter of

federal law, under New Mexico law state court consider ten statutory factors to awarding spousal support.[8]

        B.    <u>Preclusive Effect of the Final Order</u>.

  "Federal courts give the same preclusive effect to state court judgments that those judgments would be given in the state court from which they emerged." *Strickland v. City of Albuquerque,* 130 F.3d 1408, 1411 (10th Cir. 1997), citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). Both issue preclusion and claim preclusion are recognized in New Mexico. *See Lopez Roofing Serv. v. Baker (In re Baker)*, 2013 WL 6528813, at *3-4 (Bankr. D.N.M. 2013) (providing elements for issue preclusion and claim preclusion under New Mexico law).

---

[8] Section 40-4-7(E) NMSA 1978 provides that, in determining an award of spousal support a court shall consider:

    (1)    The age and health of and the means of support for the respective spouses;

    (2)    The current and future earnings and the earning capacity of the respective spouses;

    (3)    The good-faith efforts of the respective spouses to maintain employment or to become self-supporting;

    (4)    The reasonable needs of the respective spouses, including:

        (a)    the standard of living of the respective spouses during the term of the marriage;

        (b)    the maintenance of medical insurance for the respective spouses; and

        (c)    the appropriateness of life insurance, including its availability and cost, insuring the life of the person who is to pay support to secure the payments, with any life insurance proceeds paid on the death of the paying spouse to be in lieu of further support;

    (5)    The duration of the marriage;

    (6)    The amount of the property awarded or confirmed to the respective spouses;

    (7)    The type and nature of the respective spouses' assets; provided that potential proceeds from the sale of property by either spouse shall not be considered by the court, unless required by exceptional circumstances and the need to be fair to the parties;

    (8)    The type and nature of the respective spouses' liabilities;

    (9)    Income produced by property owned by the respective spouses; and

    (10)    Agreements entered into by the spouses in contemplation of the dissolution of marriage or legal separation."

1.     Claim Preclusion.  Claim preclusion bars litigation of claims that were or could have been advanced in an earlier proceeding. *Strickland v City of Albuquerque*, 130 F.3d 1408, 1411 (10th Cir. 1997), citing *State ex rel Martinez v Kerr-McGee Corp.*, 898 P.2d 1256, 1259 (N.M. App. 1995).  Under New Mexico law, claim preclusion requires four elements: "(1) the same party or parties in privity; (2) the identity of capacity or character of persons for or against whom the claim is made; (3) the same subject matter; and (4) the same cause of action in both suits."  *Strickland*, 130 F.3d at 1411, citing *Myers v. Olson*, 676 P.2d 822, 824 (N.M. 1984).

Here, the case involves the same parties and perhaps the same subject matter, but different causes of action.  In the Divorce Proceeding, Judge Parsons addressed divorce-related issues arising under New Mexico state and common law.  This Court, in contrast, is dealing with confirmation of a Chapter 13 plan under § 1325(a), and the allowance of an asserted priority claims under § 507(a)(1).  One particular fact issue is addressed by both courts, but the claims are not the same.

2.     Issue Preclusion.   Under New Mexico law, issue preclusion bars re-litigation of an ultimate fact or issue if: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the … [present] … case is different from the cause of action in the prior … [case], (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation."  *Ideal v. Burlington Res. Oil & Gas Co. LP*, 233 P.3d 362, 365 (N.M. 2010), citing *Shovelin v. Cent. N.M. Elec. Coop., Inc.,* 850 P.2d 996, 1000 (N.M. 1993). *See also Deflon v. Sawyers,* 137 P.3d 577, 583 (N.M. 2006) (a difference between claim preclusion and issue preclusion is that the latter does not require that both suits be based on the same cause of action).

-8-

Bankruptcy courts may use issue preclusion in determining whether a debt is nondischargeable. *See Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991) (noting that collateral estoppel principles do apply in discharge exception proceedings under § 523); *Brown*, 2013 WL 5376541 at *3 ("A state court judgment can have collateral estoppel effect for purposes of establishing the non-dischargeability of a particular debt under § 523."). Nevertheless, collateral estoppel should be used guardedly in nondischargeability litigation:

> Collateral estoppel effect should be given to state court judgments for purposes of establishing dischargeability in bankruptcy "only if, *inter alia*, the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernible from that court's record."

*Brown*, 2013 WL 5376541 at *5, citing *Hutton v. Ferguson (In re Hutton)*, 463 B.R. 819, 825-26 (Bankr. W.D. Tex. 2011).

Although the cases cited above deal with dischargeability litigation while the issue here is the priority status of a claim, the Court sees no reason why the analysis and application should differ.

Two of the four elements of issue preclusion under New Mexico law are clearly met here: Debtor and Munker were parties to the Divorce Proceeding and the causes of action are different in this case and the Divorce Proceeding. The remaining two elements are more problematic. It is not clear that the nature of Debtor's obligation to Munker was actually litigated. Although Judge Parsons found "that [Debtor's] Debt owed to [Munker] is a domestic support obligation," Final Order at ¶ 101, the record contains little or no indication that evidence was presented on Munker's need for alimony or support, nor whether Judge Parsons weighed the NMSA §40-4-7(E) factors. If the nature of the debt had actually been a significant issue in the Divorce Proceeding, the record would be replete with testimony of witnesses, documents, findings of fact

about the parties' income and expenses, etc.   On the current record this Court cannot even tell who has custody of the parties' minor child.

Furthermore, a review of Judge Parsons' letters and the Final Order could easily lead one to conclude that the label "alimony" was placed on the debt to prevent discharge in a subsequent bankruptcy, not because the debt really was alimony.  While there is nothing improper with calling a property settlement alimony to avoid a potential bankruptcy discharge, the Court is not bound by such a result-driven label.

The final element of issue preclusion suffers from the same problems as the third—the right words are used, but there is very little evidence that a necessary determination was made that the debt in question was a domestic support obligation

3.      Because Preclusive Principles Do Not Dictate the Result, Fact Issues Prevent Entry of Judgment.  As set forth above, neither claim nor issue preclusion assists the Court in ruling on the Motion.  While summary judgment does not require use of one of the preclusive doctrines, there is not enough of a record in this case to determine the nature of the debt.  There is evidence in the record that the debt is a domestic support obligation.  There also is evidence, however that the debt represents a property/debt division.  The conflicting evidence creates a genuine issue of material fact.

It could well be that the nature of the debt was actually litigated (the trial transcript might show this) and/or necessarily determined (for example, in an oral ruling at the end of the trial).  If so, the Court invites Munker to supplement the record.  Otherwise, the Court will have to take evidence at the confirmation hearing about, inter alia, the NMSA §40-4-7(E) factors and/or the "federal" factors listed in Colliers.

-10-

## V.     <u>CONCLUSION</u>

Neither claim nor issue preclusion applies in this case; in their absence, genuine fact issues about the nature of the debt prevent entry of summary judgment.  If Munker has evidence that the issue was actually litigated and necessarily determined, he should promptly supplement the record.  Otherwise, the matter will be tried along with other confirmation issues.

The Court will enter an order consistent with this Memorandum Opinion.



_____
Hon. David T. Thuma
United States Bankruptcy Judge



Entered:  July 21, 2014.

Copies to:

Michael K. Daniels
P.O. Box 1640
Albuquerque, NM 87103

R. Trey Arvizu, III
P.O. Box 1479
Las Cruces, NM 88004

Kelley L. Skehen
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102